[No. 30398.   Department Two.   April 9, 1948.]

`E. L. BAKER *et al., Appellants,* v. LAKE CITY SEWER DISTRICT *et al., Respondents.*[1]

[1]Reported in 191 P. (2d) 844.

*Herb Hansen,* for appellants.

*Wright, Booth & Beresford,* for respondents.

STEINERT, J.—Plaintiffs, as residents and taxpayers of a newly organized sewer district and as prospective users of a proposed sewer system to be constructed in the district, brought suit challenging the legality of the proceedings under which the sewer district was organized and the commissioners thereof elected, and questioning the validity of all acts done and contracts executed by the sewer district commissioners. The sewer district, a municipal corporation, and its elected commissioners demurred to the complaint. The trial court sustained the demurrer and, upon plaintiffs' refusal to plead further, entered an "order dismissing the complaint" with prejudice. Plaintiffs appealed.

For a proper understanding of the questions here in-

volved, we shall state the essential facts alleged in the complaint.

At a regular meeting of the board of county commissioners of King county held August 26, 1946, there came before the board for consideration the matter of the creation of a sewage disposal district, later designated as Lake City Sewer District, comprising an area of approximately three square miles lying north of the city limits of Seattle and west of Lake Washington, in King county.

Dr. John D. Fouts, who at that time was county health officer for King county, attended the meeting and made an oral statement to the commissioners, expressing his opinion that the existing sewage disposal facilities in the above area were a menace to the health and convenience of the public, and recommending the organization of a sewage disposal district pursuant to the law applicable to such projects.

Proceeding under the provisions of chapter 210, p. 637, Laws of 1941 (Rem. Supp. 1941, § 9425-10 *et seq.*), as amended by chapter 140, p. 375, Laws of 1945 (Rem. Supp. 1945, § 9425-10 *et seq.*), the county commissioners thereupon passed, as a preliminary step in the creation of the sewer district, their purported resolution No. 10143, a copy of which is attached to appellants' complaint as exhibit No. 1. Since that resolution constitutes the "focal point" of appellants' attack upon the validity of the entire proceedings relative to the establishment and subsequent activities of the sewer district, we shall set forth at length the material portion thereof as it appears in the exhibit. It reads:

"Resolution No. 10143

"Whereas, I, John D. Fouts, the County Health Office[r] for the County of King, State of Washington, after investigation, am of the opinion that in all the area described below, the existing sewage disposal facilities are inadequate; and

"Whereas, the organization of a sewage disposal district under the provisions of Chapter 210, Laws of 1941, and all amendments thereto, in my opinion is a necessity, and would be for the public welfare; and

"Whereas, it is my opinion that the sewage disposal facilities now provided in such area are a menace to the health and convenience of the public:

"Now, THEREFORE, I recommend to the Honorable Board of County Commissioners that the organization of a sewage disposal district under the provisions of Chapter 210, Laws of 1941, and all amendments thereto, having the boundaries described below, be declared to be a necessity, and that the County Commissioners take immediate action in accordance with the aforesaid statute to accomplish the formation of such district having the following described boundaries, to-wit:   [Here follows a description of the area to be included in the district.]

"All situated in King County, Washington.

*"Passed this 26th day of August, 1946.*

(SEAL: COMMIS-
SIONER'S COURT—
KING COUNTY,
WASH.)

"Signed J. Harold Sparkman, A. E. Phelps and John W. [Joseph A.] Whetstone, Board of County Commissioners, King County, Washington."   (Italics ours.)

It will be noted that this "resolution" reads as though it were the statement of Dr. Fouts speaking in the first person, but is not signed by him; that neither the word "resolution" nor the word "resolved" occurs anywhere in the document, except that in the title appears the word "Resolution" as numbered; and that the first and only indication of the fact that the instrument served to express or record the act of the county commissioners themselves is the appearance of their signatures immediately following the concluding statement "Passed this 26th day of August, 1946."

Thereafter, the county commissioners issued and published notice of the passage of their resolution No. 10143, stating in such notice that the resolution had declared the formation of a sewer district to be a necessity and had described the area to be included in the district, and fixing in the notice a day for public hearing of the matter.   Upon the hearing on the day set, the county commissioners passed a second resolution, No. 10136, reaffirming the necessity for creating and forming a sewer district within the territory referred to above; declaring that such sewer dis-

trict would be conducive to the public health, welfare, and convenience; fixing the boundaries of the proposed district; and calling a special election for the purpose of submitting the proposition to the voters of the district for their approval or rejection and for the purpose of electing three commissioners for the district if created.

A special election was duly held, at which 566 votes were cast in favor of the formation of the district and 224 votes against it; at the same time, three sewer district commissioners were elected by the voters. Thereupon, the county commissioners adopted a third resolution, No. 10262, declaring the sewer district duly created and established and its commissioners duly elected. The chosen commissioners thereupon qualified for office and thereafter entered into various contracts for engineering, legal, and advisory services, and passed a resolution levying an assessment of three mills against all of the property within the district.

Thereupon appellants instituted this action and, in their complaint, asked the court to find and declare that no proper declaration of emergency and no recommendation of formation of the sewer district were ever made by Dr. Fouts, the county health officer, as required by law; that resolution No. 10143, set forth above, purporting to have been passed by the board of county commissioners, is illegal and void because it is not in the form required for resolutions and does not comply with the applicable statute; that the sewer district has no legal standing as a municipal corporation, because of the informalities and irregularities previously mentioned; that for the same reasons the sewer district commissioners have no standing as such; and that all of their acts and contracts be declared null and void. Respondents' demurrer to appellants' complaint having been sustained and the complaint having been dismissed with prejudice, this appeal followed.

Appellants' contentions, as set forth in their brief, are (1) that recommendations of the county health officer with respect to the formation of a sewer district must be in writing, that the giving of a written recommendation is jurisdictional, and that a mere oral recommendation, as

was given in the instant case, is insufficient; (2) that a resolution declaring a sewer district a necessity, as required by statute, is a jurisdictional step in the creation of a sewer district, and failure to comply *strictly* with the law in the passage of the resolution renders all subsequent proceedings void; and (3) that the resolution here involved did not comply with the statute and hence all proceedings taken pursuant thereto are a nullity.

Respondents, taking a contrary position, contend (1) that the recommendation of the county health officer need not be in writing nor be subscribed by him; (2) that resolution No. 10143 sufficiently complied with the statute authorizing the county commissioners to declare a sewage disposal district a necessity, if in the opinion of the county health officer the existing sewage disposal facilities of such area are inadequate and are a menace to the health and convenience of the public; and (3) that even though the preliminary recommendation and resolution were in some respects irregular or defective, such irregularities or defects were nonprejudicial in character and were fully cured by a fair and regular election concerning which the electors were fully apprised and at which the formation of the district was sanctioned by the voters.

The procedure for the establishment, operation, and regulation of sewer districts is set forth in chapter 210, p. 637, Laws of 1941 (Rem. Supp. 1941, § 9425-10 *et seq.*), as amended by chapter 74, p. 154, Laws of 1943 (Rem. Supp. 1943, § 9425-10 *et seq.*), and chapter 140, p. 375, Laws of 1945 (Rem. Supp. 1945, § 9425-10 *et seq.*).

Under these statutes, a sewer district can be created only as the result of an election by the voters in the district sought to be organized. Preliminary to the election, organizational proceedings may be initiated either by a petition stating that the establishment of such district will be conducive to the public health, convenience, and welfare, and signed by at least twenty-five per cent of the qualified electors residing within the proposed district, or else by resolution of the county commissioners if, in the opinion of the county health officer, the existing sewage disposal facilities in the district

to be created are inadequate and are a menace to the health and convenience of the public, and the formation of such district is for the public convenience. If the county health officer be of such opinion, the board of county commissioners may, by resolution, "declare a Sewerage Disposal District a necessity."

Upon such petition or resolution, the county commissioners are required to publish notice of a meeting at which the petition or resolution is to be presented for hearing. At such hearing, the board is required finally to define the boundaries of the proposed sewer district, make findings as to whether such district will be conducive to the public health, welfare, and convenience, and be of special benefit to the land included within its boundaries, and, upon affirmative findings, call a special election at which the proposition of forming the district shall be submitted to the voters for their approval or rejection. Notice of the election is then required to be published, and, after the election, the votes are canvassed. If a majority of those voting on the proposition vote in favor of it, the county election board shall so declare in its canvass, and the sewer district shall then be and become a municipal corporation of the state.

In the case at bar, appellants concede that all of the necessary steps were taken as required by statute, except those pertaining to or connected with the passage of preliminary resolution No. 10143. Their sole contentions on the appeal are that the recommendation of the health officer and the preliminary resolution, No. 10143, passed by the board of county commissioners, were irregular, and that such irregularities rendered all subsequent proceedings null and void.

■■ The first question to be decided, then, is whether the recommendation of the county health officer was required to be in writing.

While it might be advisable or preferable for the county health officer to express *in writing* his opinion and recommendation as to such matters, in order to obviate any possible question that might thereafter arise concerning his action, there is nothing in the statute which requires that

his opinion and recommendation be expressed in writing, rather than orally. All that the statute requires in that respect is that he be of the opinion that the existing sewage disposal facilities in the district to be created are inadequate and are a menace to the health and convenience of the public, and that the creation of the proposed sewer district is for the public convenience. Undoubtedly, his opinion and recommendation must in some manner be conveyed to the county commissioners before that body can lawfully proceed by resolution, but the legislature did not see fit to prescribe the manner in which that information is to be conveyed, nor did it require that the opinion or recommendation be in writing. We cannot inject into the statute as a mandatory requirement something that the legislature deliberately left out.

In this connection, appellants advance the additional argument that it does not appear that the health officer's recommendation was actually rendered *prior* to the declaration of necessity made by the board of county commissioners in its resolution No. 10143. Appellants do not assert that the recommendation did not in fact precede the action taken by the county commissioners, but only that the minutes or records of the board do not show the order of priority. For the purposes of the present discussion, we will assume that it was necessary that the health officer's expression of opinion actually precede the declaration of necessity by the county commissioners.

However, in the absence of allegation and proof to the contrary, the law presumes that an officer charged with the performance of a duty did not neglect that duty, but duly performed it at the proper time and in the proper manner. *School Dist. No. 88 v. Morgan,* 147 Wash. 321, 266 Pac. 150; *Camp v. Peterson,* 191 Wash. 634, 71 P. (2d) 1074; *Thestrup v. Grays Harbor County,* 12 Wn. (2d) 545, 122 P. (2d) 797; 20 Am. Jur. 177, 180, Evidence, §§ 171, 174; 31 C. J. S. 798, Evidence, § 146.

In our opinion, the recommendation of the county health officer complied, in form and substance, with the

requirements of the statute, and, so far as the record discloses, was timely made.

■ The next question to be decided is whether resolution No. 10143, set forth above, was in compliance with § 2 of chapter 140, p. 375, Laws of 1945 (Rem. Supp. 1945, § 9425-11), that is, whether the resolution was sufficient in form and·content to constitute a resolution declaring the sewage disposal district a necessity, as required by that section of the statute.

At the outset, it is to be noted that the resolution called for by the statute is simply a vehicle through which the board of county commissioners "may declare a Sewerage Disposal District a necessity." In no sense and to no extent does the resolution itself create the district; it is simply a preliminary step in the statutory procedure for holding a public hearing on the question of establishing a sewer district and for subsequent submission of the proposition to the voters with whom rests the final determination of the matter. It may also be noted that the statute does not prescribe any specific form for such resolution.

It may be conceded that resolution No. 10143 is not artfully drawn and is not to be recommended as a form generally to be followed in cases involving the establishment of sewer districts. However, the question with which we are presently concerned is not whether the phraseology of this particular resolution is in all respects correct in form, but, rather, whether it is sufficient in substance to evidence and constitute a declaration of necessity.

■ The term "resolution" as applied to the act of an official body such as a city council or a board of county commissioners ordinarily denotes something less solemn or formal than the term "ordinance," and, generally speaking, is simply an expression of the opinion or mind of the official body concerning some particular item of business or matter of administration coming within its official cognizance. *Sawyer v. Lorenzen & Weise,* 149 Iowa 87, 127 N. W. 1091, Ann. Cas. 1912C, 940; *Andrew v. Iowa State Bank of Osceola,* 216 Iowa 1170, 250 N. W. 492; *New Orleans & N. E. R. Co. v. City of Picayune,* 164 Miss. 737, 145 So. 101; 37 Am. Jur.

755, Municipal Corporations, § 142; 43 C. J. 519, Municipal Corporations, § 798.

In the absence of an express provision of statute with reference to form and content, a resolution need not be in any set form of words. *Sawyer v. Lorenzen & Weise, supra; New Orleans & N. E. R. Co. v. City of Picayune, supra; McCarthy v. McElvaney* (Tex. Civ. App.), 182 S. W. 1181, 183 S. W. xv.

In the *McCarthy* case, *supra,* the facts and the holding of the court are accurately stated in the syllabus, which reads as follows:

"Under the charter of the city of Denison, providing by article 4, § 4, that when the city council deems it advisable to issue bonds it shall, by resolution, declare the purpose for which it deems the issue advisable, the amount of bonds which it deems advisable to issue and sell, the rate of interest, and the denomination of the bonds, and shall thereupon order an election on the question of issuing bonds, a resolution reading, 'Whereas the city council of the city deems it advisable to issue certain of said bonds for the purpose and of the amounts hereinafter set forth,' without reciting, 'Be it resolved,' and without containing the word 'resolution,' was a sufficient 'resolution,' which is a mere expression of the opinion or mind of the council concerning some matter of administration coming within its official cognizance, and for which no set form of words is essential if the requirement calling for such expression is met, and was not objectionable in that it did not in express terms declare that the council deemed it advisable to issue the bonds."

Our court has frequently held that a resolution of a municipal body is sufficient if it substantially complies with the requirements prescribed by charter or statute. *Ehrhardt v. Seattle,* 33 Wash. 664, 74 Pac. 827; *Spokane v. Ridpath,* 74 Wash. 4, 132 Pac. 638; *Allen v. Bellingham,* 77 Wash. 469, 137 Pac. 1016; *Wilce v. Cheney,* 93 Wash. 422, 161 Pac. 72; *Manlove v. Johnson,* 198 Wash. 280, 88 P. (2d) 397; *Public Utility Dist. No. 1 v. Superior Court,* 199 Wash. 146, 90 P. (2d) 737.

In the *Ridpath* case, *supra,* it was held that a provision of a city charter, which required the city council, when

ordering an improvement, to direct the board of public works "by resolution" to prepare and transmit a report of such work, was sufficiently complied with when the action taken by the council was by "informal motion," since there was no difference in substance between a resolution and a motion.

In the *Allen* case, *supra,* suit was brought to enjoin collection of certain reassessments for local improvements. The city charter provided that no ordinance providing for public improvements should be passed without publication of a resolution declaring the intention of the city to make such improvement and setting forth, among other things, the nature and estimated cost of the improvement. The plaintiff in that case contended that the resolution passed by the city council did not comply with the charter provision. Rejecting that contention, this court said:

"When the matters covered by the resolution are compared with the charter requirements, it appears that there is a substantial compliance therewith. While the resolution may not be artfully drawn, it is sufficiently clear to make manifest that the proposed improvement was for sewer construction, rather than primarily the improvement of a particular street. It would be difficult for one reading the resolution to misconceive its purpose."

The *Manlove* case, *supra,* arose out of Rem. Rev. Stat., § 11607 [P.P.C. § 833-5], which required the board of county commissioners of any county, on petition of ten per cent of the qualified electors of the county, to submit to the voters of the county, "by resolution," the proposition of creating a public utility district. A petition for the creation of such district, signed by the requisite number of qualified electors, was presented to the board of county commissioners, and the board formally "ordered" the petition to be transmitted to the county election board for submission to the voters at the next general election. At the election, the proposition to create the district was approved by the voters.

In that case, the plaintiff's attack upon the proceedings was based on the contention that the county commissioners did not "by resolution" submit the proposition to the voters,

but instead "ordered" the petition transmitted to the election board for submission. Summarily disposing of that contention, this court said:

"The appellant's contention is without merit. The board's action was in substantial compliance with the statutory requirement, whether the form of words employed be called a resolution or an order."

Appellants herein rely principally upon the case of *Buckley v. Tacoma*, 9 Wash. 253, 37 Pac. 441. In that case, this court held that a resolution by the city council of Tacoma declaring its intention to improve a certain street by grading and sidewalking was not sufficient, under the requirements of the Tacoma charter, to authorize the improvement of such street at the cost of abutting owners. The city charter required that before any work or improvement was commenced, the city council, on recommendation of the work by the board of public works, "shall pass a resolution ordering that said work be done." The resolution involved in that case merely declared the intention of the city council to improve a certain street by grading and constructing sidewalks. This court held that the resolution was insufficient because it did not reasonably describe the kind of improvement intended, and particularly because, while it declared the intention of the city council to improve a certain street, it did not "order anything" to be done. Concluding its discussion of that issue, the court said:

"The resolution of intention should have *defined* the improvement intended, and directed the board of public works to *proceed with its execution as defined*, after notice, and upon the failure of property owners to present a sufficient remonstrance." (Italics ours.)

The factual situation in that case is not comparable to that in the case at bar, and the decision is of no controlling effect here.

We are of the opinion that resolution No. 10143, although imperfectly drawn, is sufficient in form and substance to comply with the statute, which requires simply that the board of county commissioners by resolution declare a sewage district to be a necessity.

It will be noted that the resolution, entitled as such, recites the recommendation of the county health officer that the organization of a sewage disposal district be declared a necessity, and that the county commissioners take immediate action in accordance with the statute to accomplish the formation of such district. Immediately following the recommendation is the statement "Passed this 26th day of August, 1946," signed by all of the county commissioners. Clearly, the county commissioners intended to pass favorably on the county health officer's recommendation. We think the word "passed," as there used, meant that the county commissioners thereby approved the recommendation and adopted its language as a declaration of necessity by the board itself.

As indicated above, appellants further contend that a proper resolution is a jurisdictional step in the creation of a sewer district, without which all subsequent proceedings are void. Since we have held that the resolution in this instance is sufficient to comply with the statute, it is unnecessary to discuss the jurisdictional feature.

The order sustaining the demurrer and dismissing the complaint is affirmed.

MALLERY, C. J., BEALS, JEFFERS, and HILL, JJ., concur.