Honorable Andrew K. Miller Benton County Prosecutor 7320 West Quinault Kennewick, WA 99336-7693
Dear Prosecutor Miller:
By letter previously acknowledged, you have requested our opinion on the following questions:
1. Are the Benton PUD commissioners, when setting their commissionerdistricts, required to include all areas within the Richland City limitswithin one or more Benton PUD commissioner districts?
 2. If the current Benton PUD commissioner districts have been setinconsistent with state law, does the Benton County Auditor have a dutyto revise the boundaries set by the Benton PUD commissioners?
 3. If the current Benton PUD commissioner districts have been setinconsistent with state law, does the Benton PUD commission haveauthority to immediately revise such districts, or does it have to waituntil 2006 pursuant to RCW 54.12.010?
While additional questions were posed, our affirmative answer to question 1 renders consideration of those questions unnecessary.
 BRIEF ANSWER
Boundaries of county-wide public utility district (PUD) commissioner districts established pursuant to RCW 54.12.010 must include all territory of the PUD, including any city not excluded from the boundaries of the PUD when it was originally established. The city of Richland is included within the territorial jurisdiction and boundaries of Benton PUD. As such, Richland must be included in the PUD commissioner districts when they are changed. The county auditor has no authority to institute changes regarding commissioner district boundaries that have been set inconsistent with state law. Rather, such responsibility lies with the district commission.
 ANALYSIS
Your questions concern the authority of PUD commissioners to set PUD commissioner district boundaries that exclude all or part of a city that was included in the boundaries of a county-wide PUD when the PUD was originally established. Specifically, your questions address the exclusion of parts of the city of Richland from Benton County PUD commissioner districts.
For purposes of analysis, you have provided the following relevant facts for consideration. Richland was first incorporated as a fourth class city in 1910 and was entirely located within Benton County. CitingRoyer v. Pub. Util. Dist. 1 of Benton County, 186 Wn. 142, 56 P.2d 1302
(1936), you indicate that Benton PUD was subsequently formed in 1934 pursuant to the procedures for establishing PUD boundaries coextensive with the limits of the county. Based upon investigation by personnel from your office, Benton PUD, and Richland, you found no information suggesting that Richland owned or operated any utilities within the operational authority of a PUD at the time Benton PUD was formed.
In November 1948, Richland was disincorporated and became a federally controlled Atomic Energy Community operated by the Atomic Energy Commission. In 1958, Richland was reincorporated under Washington law as a self-governing first class city. You indicate that during all or a portion of the period since reincorporation in 1958, Richland has operated both electrical and water utilities.
From 1934 through 1982, you indicate that the Benton PUD commissioner districts were set to include all of the area within Richland. However, beginning in 1982, the Benton PUD commissioners established commissioner districts that excluded all or nearly all of Richland from PUD commissioner district boundaries. The most recent restructuring of commissioner district boundaries occurred in May 2002, which included only one voting precinct from within Richland city limits in a PUD commissioner district.[1] The decision by Benton PUD to include only a small portion of Richland in PUD commissioner districts has led to this inquiry.
1. Are the Benton PUD commissioners, when setting their commissionerdistricts, required to include all areas within the Richland city limitswithin one or more Benton PUD commissioner districts?
Initially, we observe that the creation of a county-wide PUD is authorized by RCW 54.08.010, which provides as follows:
At any general election held in an even-numbered year, the county legislative authority of any county in this state may, or, on petition of ten percent of the qualified electors of the county based on the total vote cast in the last general county election held in an even-numbered year, shall, by resolution, submit to the voters of the county the proposition of creating a public utility district which shall be coextensive with the limits of the county as now or hereafter established.
Under RCW 54.12.010, in a newly formed county-wide PUD in a county with three county legislative authority districts, one PUD commissioner is chosen from each of the three legislative authority districts until the PUD commissioners change the boundaries of the PUD commissioner districts:
When the public utility district is county-wide and the county has three county legislative authority districts, then, at the first election of commissioners and until any change shall have been made in the boundaries of public utility district commissioner districts, one public utility district commissioner shall be chosen from each of the three county legislative authority districts.
RCW 54.12.010. The only method for changing PUD commissioner district boundaries is set forth in the last paragraph of RCW 54.12.010:
The boundaries of the public utility district commissioner districts may be changed only by the public utility district commission, and shall be examined every ten years to determine substantial equality of population in accordance with chapter 29.70 RCW, but the boundaries shall not be changed oftener than once in four years, and only when all member of the commission are present. Whenever territory is added to a public utility district under RCW 54.04.035, the boundaries of the public utility commissioner districts shall be changed to include such additional territory._ The proposed change of the boundaries of the public utility district commissioner district must be made by resolution and after public hearing.
Id.
It is well established that the territorial limits of a county-wide PUD are coextensive with those of the county and include all cities that do not already own or operate all utilities that a PUD is authorized to provide. State ex rel. Wash. Water Power Co. v. Superior Court,187 Wn. 309, 60 P.2d 263 (1936); Hillier v. Pub. Util. Dist. 3,188 Wn. 602, 611-13, 63 P.2d 392 (1936); Pub. Util. Dist. 1 v. SuperiorCt. in and for Whatcom Cy., 199 Wn. 146, 158, 90 P.2d 737(1939). Under RCW 54.04.030, the relevant language of which has remained unchanged since the enactment of Laws of 1931, ch. 1, § 12, it states:
No public utility district created hereunder shall include therein any municipal corporation, or any part thereof, where such municipal corporation already owns or operates all the utilities herein authorized: PROVIDED, that in case it does not own or operate all such utilities it may be included within such public utility district for the purpose of establishing or operating therein such utilities as it does not own or operate[.]
RCW 54.04.030. Only if a city is operating all of the utilities within the operational authority of a PUD at the time the PUD is formed will that city be excluded from the jurisdiction of a county-wide PUD.Hillier, 188 Wash. at 612-13.[2]
In applying the law, we start from the fact (as stated in your opinion request) that Benton PUD is a county-wide PUD. As such, its boundaries when created were coextensive with those of the county, and all cities within the county are subject to its jurisdiction so long as they did not at that time own or operate all utilities that a PUD is authorized to provide and were included within the boundaries of the original district. There is no evidence that Richland owned or operated all utilities within the operational authority of a PUD at the time Benton PUD was created or that Richland was excluded from the original boundaries of the PUD. Accordingly, the entire city of Richland is within the territorial boundaries and jurisdiction of Benton PUD.
Based upon this conclusion, the focus of your inquiry turns to whether the Benton PUD commission is authorized to exclude from PUD commissioner districts any or all of the territory included within the boundaries of Richland even though the entire city is included within the boundaries and jurisdiction of the PUD. Our answer, as set forth below, is in the negative.
Pursuant to RCW 54.12.010, a PUD is a municipal corporation governed by a commission consisting of elected commission members. Each commission member is from a separate commissioner district. It is our understanding that Benton PUD is governed by a three member board of commissioners representing three commissioner districts. There is no provision in RCW54.12.010 for excluding from PUD commissioner districts any territory within the boundaries of a county-wide PUD. To the contrary, this office has previously opined that "all registered voters who reside within the boundaries of a public utility district are entitled to vote in all district elections." AGLO 1982 No. 8, at 3. We see no reason to deviate from this position.
Under RCW 54.12.010, when a county-wide PUD is originally established, the PUD commissioner districts are coextensive with the PUD boundaries. As observed above, the only possible exclusion from a commissioner district is for a municipal corporation that already owns or operatesall utilities within the operational authority of the PUD at the time the PUD is formed. The only method for changing commissioner district boundaries is set forth in the last paragraph of RCW 54.12.010. Seesupra p. 3.
We understand the PUD may contend that inherent in the authority of PUD commissioners to change the boundaries of the PUD commissioner districts pursuant to RCW 54.12.010 is the power to also change the territorial and jurisdictional boundaries of the PUD. Such a theory, however, ignores not only rules of statutory construction but also the legally significant distinction between commissioner district boundaries established for the purpose of electing PUD commissioners and territorial boundaries
establishing the jurisdictional area over which the Legislature has granted PUD commissioners the exercise of their authority. While this statute sets forth how the boundaries of commissioner districts may be changed, we do not agree that it authorizes any portion of territory within the jurisdictional authority of a PUD to be excluded from a commissioner district.
In construing whether RCW 54.12.010 authorizes PUD commissioners to change the territorial and jurisdictional boundaries of the PUD, we apply well recognized rules of statutory construction. When interpreting a statute, a court will assume that the Legislature meant exactly what it said. Geschwind v. Flanagan, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993). The legislative intent of an unambiguous statute is derived solely from its language, and a court will resort to general rules of statutory construction to go behind the statute to determine legislative intent only if the statutory language is ambiguous. Senate Republican CampaignComm. v. Pub. Disclosure Comm'n, 133 Wn.2d 229, 241, 943 P.2d 1358
(1997). Where a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions under the maxim expressio unius est exclusio alterius —
specific inclusions exclude implication. Queets Band of Indians v.State, 102 Wn.2d 1, 4-5, 682 P.2d 909 (1984). Thus, where the Legislature has regularly evidenced its intent in other statutes to expressly legislate certain matters, failure of the Legislature to address the matter in another statute infers an intended omission. See id. at 4-5.
In RCW 54.12.010, the Legislature has clearly expressed its intent to grant PUD commissioners the authority to change PUD commissioner district boundaries. The statute does not include any language authorizing PUD commissioners to change the PUD territorial and jurisdictional boundaries. In fact, we find no statutory provision for reducing the territorial or jurisdictional boundaries of a PUD once it is formed. Under RCW 54.04.035, additional area may be annexed into a PUD and, pursuant to RCW 54.12.010, this annexed area is to be included in the boundaries of PUD commissioner districts. PUDs may also be consolidated or enlarge their boundaries as provided in RCW 54.32.010. Further, authority for dissolution of a PUD is provided in RCW 54.08.080. However, we are not aware of an authorized process for a PUD to exclude all or part of a city, or for a city to seek exclusion from PUD territory, if the city subsequently begins to own or operate all utilities within the authority of a PUD.
Additionally, it is clear that the Legislature knows how to grant a municipal corporation such as a PUD authority to withdraw or exclude territory from its jurisdictional boundaries. In RCW 57.28, the Legislature has expressly established procedures for withdrawal of territory from water-sewer districts. Fire protection districts are granted similar authority under RCW 52.08 and RCW 52.04.056. Likewise, in RCW 70.44.235 and RCW 70.44.400, the Legislature has expressly provided the method for withdrawal of territory from hospital district boundaries.[3] Because the Legislature has failed to expressly designate similar authority for the withdrawal of territory from the boundaries of a PUD, it is inferred that such authority was intentionally omitted under the maxim expressio unius est exclusio alterius. The courts will not read into a statute matters that are not there or things it conceives the Legislature has left out unintentionally. State v. Enloe,47 Wn. App. 165, 170, 734 P.2d 520 (1987).
To the extent there may be policy reasons that a PUD may desire to exclude from its boundaries territory that it does not provide with utility services, we defer to the Legislature. Public policy issues are properly addressed to the Legislature, not the judiciary. Waggoner v. AceHardware Corp., 134 Wn.2d 748, 755, 953 P.2d 88 (1998). The courts are not concerned with the wisdom of a statute but only with its meaning and validity. City of Seattle v. Hill, 72 Wn.2d 786, 801, 435 P.2d 692
(1967).
We conclude that RCW 54.12.010 does not authorize PUD commissioners to change the territorial and jurisdictional boundaries of a PUD. Richland has been within the jurisdictional authority of Benton PUD since the PUD was formed in 1934, and the Legislature has not granted the commissioners authority to exclude it or other PUD territory from PUD jurisdictional boundaries or commissioner districts. Accordingly, we conclude that Richland must be included within Benton PUD commissioner districts established pursuant to RCW 54.12.010.[4]
 2. If the current Benton PUD commissioner districts have been setinconsistent with state law, does the Benton County Auditor have a dutyto revise the boundaries set by the Benton PUD commissioners?
Pursuant to RCW 54.12.010, PUD commissioner district boundaries can only be changed by the district commission. While RCW 54.12.010 provides for a referendum petition to be filed with the county auditor within 90 days of the district commission adopting a resolution for proposed change of commissioner district boundaries, we find no authority for the county auditor to challenge boundaries set by the commission.
To the contrary, under RCW 29.15.026(1), the PUD commissioners have a duty to provide the county auditor with accurate information describing the PUD and commissioner district boundaries. The county auditor can rely on this information and has no duty to independently verify its accuracy. See Dumas v. Gagner, 137 Wn.2d 268, 293, 971 P.2d 17 (1999). Accordingly, we find no duty for the county auditor to revise commissioner district boundaries.
3. If the current Benton PUD commissioner districts have been setinconsistent with state law, does the Benton PUD commission haveauthority to immediately revise such districts, or does it have to waituntil 2006 pursuant to RCW 54.12.010?
A general requisite to the validity of any ordinance or resolution is that it conform to, and not violate, general statutes. Employco PersonnelServ. v. City of Seattle, 117 Wn.2d 606, 617, 817 P.2d 1373 (1991); 6 Eugene McQuillin, Municipal Corporations § 21.32, at 317 (3d ed. 1998). Every ordinance or resolution adopted by a municipality must yield to the predominant power of the state. Id. at 317. In case of conflict, the ordinance is void. Employco Personnel Serv., 117 Wn.2d at 617; 6 Eugene McQuillin, Municipal Corporations § 21.32, at 317 (3d ed. 1998). A void ordinance has no force or effect and may be successfully attacked at any time. City of Seattle v. Grundy, 86 Wn.2d 49, 50,541 P.2d 994 (1975); Swartout v. City of Spokane, 21 Wn. App. 665, 674,586 P.2d 135 (1978).
Here, the resolution changing the PUD commissioner district boundaries conflicts with state law, rendering it void. Being void, it has no force or effect. As such, the effect of the attempted boundary change is deemed not to have occurred. Accordingly, it appears that the most appropriate corrective action is for the PUD commission to set commissioner district boundaries in accordance with state law at its earliest convenience.
We hope the foregoing will be of assistance to you.
Sincerely,
 BRIAN E. BUCHHOLZ Assistant Attorney General:
pmd
[1] Apparently, the area within this precinct does receive electrical service from Benton PUD, along with a few other isolated areas of Richland that were not included in any PUD commissioner district.
[2] As stated in State ex rel. Panesko v. PUD 1, 9 Wn.2d 581, 588-89,115 P.2d 692 (1941), "If a municipality does not have all the utilities, the board [of county commissioners] is not authorized to exclude it from a district commenced as a county-wide one. On the other hand, if a municipality does have all the utilities, it seems clear that the [board of county] commissioners cannot include it in any district."
[3] In addition to the express grant of authority to withdraw territoryfrom their boundaries, these districts possess separate statutoryauthority to change their commissioner district boundaries: see RCW52.14.013 for fire protection districts; RCW 57.12.039 for water-sewer districts; RCW 70.44.042, 70.44.047, and 70.44.054 for hospital districts. PUDs, on the other hand, have only been granted authority to change commissioner district boundaries. This reinforces the distinction between commissioner district boundaries and the territorial boundaries of the municipality.
[4] This conclusion is also consistent with Benton PUD practice from formation of the PUD in 1934 until 1982, during which time Benton PUD commissioner districts were set to include the entire city of Richland.